UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AVILA, ET AL.                                          CIVIL ACTION

VERSUS                                                    NO. 20-1850

VILLAGE MART, LLC – SUPERIOR                  SECTION "R" (3)
FOR MEN, ET AL.

## ORDER AND REASONS

Before the Court is defendant Oakwood Shopping Center, LLC's ("Oakwood") motion for summary judgment on: (1) its crossclaim against Village Mart, LLC-Superior for Men ("Village Mart"), seeking defense and indemnification against plaintiffs' claims, and (2) dismissal of plaintiffs' direct negligence claims.[1] Village Mart[2] and plaintiffs[3] oppose the motion. For the reasons set forth below, the Court grants Oakwood's motion for summary judgment.

---

[1]    R. Doc. 52.
[2]    R. Doc. 66.
[3]    R. Doc. 67.

## I.    BACKGROUND

This case arises out of a workplace accident at a retail space that Oakwood leased to Village Mart.[4]   Plaintiffs, Eduardo Avila and Myrna Vences Avila, allege that, on or about December 21, 2018, while Eduardo Avila was painting the retail store, he fell from a ladder, sustaining a "catastrophic head injury."[5]  At the time of the accident, Eduardo Avila was employed by third-party defendant Barry Jacob Hart d/b/a BDC Painters ("BDC Painters").[6]

On December 23, 2019, plaintiffs sued owner Oakwood and its tenant, Village Mart, in Louisiana state court, alleging claims of negligence under Louisiana law.[7]   Specifically, plaintiffs asserted that defendants caused Eduaro Avila's accident by their "negligent, careless, and/or reckless actions or inactions" in: (1) failing to provide a safe work environment, (2) failing to provide proper safety equipment, (3) providing unsafe equipment, (4) failing to warn of unsafe conditions, (5) failing to control the workspace, (6) failing to correct known defects in the premise, and (7) failing to adequately train and supervise employees on the premise.[8]   On June 30, 2020, defendant

---

[4]    R. Doc. 1-4 ¶ 2.
[5]    *Id.*
[6]    R. Doc. 52-4 at 72.
[7]    R. Doc. 1-4 ¶ 3.
[8]    *Id.*

Village Mart removed the case to federal court, asserting that the requirements of diversity jurisdiction under 28 U.S.C. § 1332 were satisfied.[9]

Oakwood subsequently filed a crossclaim against Village Mart.[10]  In its crossclaim, Oakwood represented that the lease provided Village Mart a "Construction Allowance" to buildout the store space it leased at Oakwood mall.[11]  Later, Village Mart entered into a contract with Perrier Esquerre Contractors, LLC ("Perrier") to manage the construction of the buildout.[12]  Perrier, in turn, entered into a subcontract with Eduaro Avila's employer, BDC Painters, to perform painting and additional services in the leased space.[13]  Oakwood claims that it is entitled to defense and indemnity from Village Mart under the terms of the lease because plaintiffs' claims arise out of Village Mart's construction of the buildout, which Oakwood did not have "care, custody, or control" over.[14]

Oakwood now moves for summary judgment, seeking to have all the claims against it dismissed.[15]  Specifically, Oakwood asserts that it is entitled to indemnification from Village Mart as a matter of law, under the terms of

---

[9]   R. Doc. 1.
[10]   R. Doc. 33.
[11]   R. Doc. 52-4 at 8.
[12]   *Id.* at 53.
[13]   *Id.* at 67.
[14]   R. Doc. 33; R. Doc. 52 at 1.
[15]   R. Doc. 52.

an indemnification provision in the lease.[16]  Village Mart disputes Oakwood is entitled to indemnification.[17]

Oakwood also moves for summary judgment on plaintiffs' negligence claims, asserting that there is no evidence that any of its actions or inactions caused or contributed to Eduardo Avila's accident.[18]  Plaintiffs oppose the motion solely on the grounds that the parties have not conducted adequate discovery on Oakwood's liability to plaintiffs.[19]  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or

---

[16]   R. Doc. 52-4 at 67.
[17]   *Id.* at 2, 5-6, 15-16.
[18]   R. Doc. 52-1 at 12-14.
[19]   R. Doc. 67.

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

5

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

### A.    Indemnification Claim

Oakwood contends that the following provision in the lease requires Village Mart to indemnify it for plaintiffs' claims:

> **ARTICLE 20 - Indemnification**
>
> Excluding the willful misconduct of the indemnitee, Tenant shall indemnify, defend and save harmless Landlord, its parents, partners, subsidiaries, affiliates and any anchor, owner or operator which is or may be in the Shopping Center, their agents, officers and employees from and against liability, claims, demands, expenses, fees, fines, penalties, suits, proceedings, actions, and causes of action arising out of or connected with Tenant's use, occupancy, management or control of the Leased Premises or Tenant's operations or activities in the Shopping Center (whether or not occurring or resulting in damage or injury within the Leased Premises or the Joint Use Areas).  This obligation to indemnify shall include reasonable legal and investigation costs and all other reasonable costs, expense[s] and liabilities from the 1st notice that any claim or demand is or maybe made.   Tenant's obligation shall become effective beginning on the date Tenant is delivered the Leased Premises. Tenant's indemnification obligation shall survive the expiration of the Term or the earlier termination of this Lease.[20]

As an initial matter, the Court must decide which law to apply in evaluating Oakwood's indemnity claim.  In a diversity action, the Court applies the choice-of-law principles of the forum state.  *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1421 (5th Cir. 1993).  Under Louisiana law, contractual choice-of-law provisions generally must be given effect.  *See* La.

---

[20]    R. Doc. 52-4 at 23.

Civ. Code art. 3540 (providing that "issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable"); *see also Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. Ct. App. 2012) ("A choice of law provision in a contract is presumed valid until it is proved invalid."). Here, the lease contains a Louisiana choice-of-law provision.[21]

Under Louisiana law, courts apply general rules of contract interpretation to construe indemnity provisions. *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996). Therefore, "[i]nterpretation of a contract is the determination of the intent of the parties." La. Civ. Code art. 2045. The Court must interpret each provision of the contract in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050. When the terms of a contract are clear and unambiguous and do not lead to absurd results, the Court interprets them as a matter of law. *Pine Bluff*, 89 F.3d at 246; *see also* La. Civ. Code art. 2046; *My Favorite Year, Inc. v. Thomas Jefferson Constr. Corp.*, No. 97-2423, 1999 WL 64932, at *2 (E.D. La. Feb.

---

[21]     *See id.* at 34 ("This Lease shall be governed by the laws of the State in which the Shopping Center is located and shall be deemed made and entered into in the county in which the Shopping Center is located.").

4, 1999) ("Generally, a lease is the law between the parties.  The intent of the parties is described within the lease's four corners where the language is clear and explicit and does not lead to absurd consequences.").  But "ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties." *Pine Bluff*, 89 F.3d at 246.  If there are ambiguous provisions in a contract, it "must be interpreted against the party who prepared the agreement." *S. States Masonry, Inc. v. J.A. Jones Constr. Co.*, 507 So. 2d 198, 201 (La. 1987) (citing La. Civ. Code art. 2056).

Village Mart asserts that the indemnity provision does not require it to defend and indemnify Oakwood in connection with plaintiffs' lawsuit because: (1) the indemnity provision was not in effect on the date of Eduardo Avila's accident, (2) even if the provision were in effect, Oakwood is not entitled to indemnification under the terms of the indemnity provision, and (3) further discovery is necessary to determine whether Oakwood acted in a "willful manner," which would render the indemnity clause inapplicable.

First, Village Mart contends that it is ambiguous whether the indemnity provision applied during the construction period.[22]  Village Mart argues that the lease "contained two separate and distinct obligations," the

---

[22]   R. Doc. 66 at 7-10, 12-16.

"Lease" itself, and the "Description of Landlord/Tenant Work."[23]   Under Village Mart's bifurcated interpretation of the lease, the "Description of Landlord/Tenant Work" was a separate contract that applied during Village Mart's buildout of the space, and the "Lease" did not apply until the buildout was complete.[24]  Village Mart thus argues that, because the accident occurred during the buildout, the "Lease," which contains the indemnity provision relied on by Oakwood, was not yet in effect.[25]  Citing Louisiana law, Village Mart asserts that, because of this ambiguity, the Court must interpret the contract against the drafter Oakwood,[26] and in favor of Village Mart.[27]

Here, the lease's terms unambiguously indicate that the parties intended to create a single lease, composed of both the first 61 articles and the "Description of Landlord/Tenant Work" that was attached as Exhibit C. The lease states that "[t]his Lease is the only agreement between the parties for the Leased Premises."[28]   Additionally, the "Description of Landlord/Tenant Work" is not identified as a separate contract and is simply an exhibit that is attached to the lease as "Exhibit C."[29]   The lease

---

23   *Id.* at 3-4.
24   *Id.* at 12-3.
25   *Id.* at 15-16.
26   *Id.* at 7 (citing La. Civil Code art. 2056).
27   *Id.* (citing La. Civil Code art. 2057).
28   R. Doc. 52-4 at 33.
29   *Id.* at 37.

10

incorporates all of the attached exhibits into the agreement, noting that a tenant must meet "the requirements attached and made a part of this Lease as the Exhibits."[30]  Village Mart's contention that the lease includes two separate agreements, operative at distinct periods of time, is contrary to the unambiguous terms of the lease.  Because the Court finds that the "Description of Landlord/Tenant Work" exhibit is not a separate and distinct agreement from the rest of the lease, the Court does not address Village Mart's argument that the Louisiana Anti-Indemnity clause applies to the "Tenant Work" agreement.[31]

The Court also notes that even if there were some ambiguity in the lease, Village Mart errs in asserting that ambiguity should be construed against Oakwood.[32]  The lease establishes that the parties explicitly rejected these default construction rules, establishing that: "The rule of construction that a contract should be construed most strictly against the party which prepared the document shall not be applied, because both parties have participated in the preparation of this Lease."[33]  Additionally, Louisiana courts do not apply Article 2056 when, as here, the contract resulted from

---

[30]   *Id.* at 11.

[31]   R. Doc. 66 at 14-15.

[32]   *Id.* at 7.

[33]   R. Doc. 52-4 at 31.

11

negotiations between parties of equal bargaining power.  *See, e.g.*, *McDuffie v. Riverwood Int'l Corp.*, 660 So. 2d 158, 162 (La. Ct. App. 1995); *see also Gulf S. Mach., Inc. v. Am. Standard, Inc.*, No. 97-0065, 1999 WL 370600, at *2 (E.D. La. June 7, 1999).

It is also clear that the indemnification provision in article 20 of the lease was in effect on the date of Eduardo Avila's accident.  The lease's "reference provision" states that the "[e]ffective [d]ate" of the lease is July 12, 2018.[34]  That provision also states that the "Beginning Work Date" is the "date immediately following the date that Landlord delivers possession of the Leased Premises to Tenant, estimated to be on or before July 1, 2018."[35]  Similarly, the indemnification provision provides that Village Mart's obligation to indemnify Oakwood "shall become effective beginning on the date Tenant is delivered the Leased Premises."[36]  Eduardo Avila's accident was on December 21, 2018, several months after the effective date of the lease, the beginning work date, and the date when Village Mart took possession of the premises.  Accordingly, the indemnity provision relied on by Oakwood was in effect at the relevant time.

---

[34]   R. Doc. 52-4 at 7.

[35]   *Id.*

[36]   *Id.* at 23.

Alternatively, Village Mart represents that Oakwood is not entitled to indemnification under the terms of the indemnification clause. Under the indemnity provision, the relevant inquiries are whether (1) plaintiffs' claims "ar[ose] out of or [were] connected with Tenant's [Village Mart's] use, occupancy, management or control of the Leased Premises" and (2) whether plaintiffs' injuries were the result of "willful misconduct of the indemnitee [Oakwood]."[37]

As to whether plaintiffs' injuries were related to Village Mart's use of the leased premises, the indemnity provision provides indemnity for actions "arising out of or connected with" Village Mart's "use, occupancy, management, or control of the Leased Premises."[38] Louisiana courts have applied a "but for" causation test to indemnity provisions containing "arising out of" language. *Kan. City S. Ry. Co. v. Pilgrim's Pride Corp.*, No. 06-03, 2010 WL 1293340, at *6 (W.D. La. Mar. 29, 2010); *see also Perkins v. Rubicon, Inc.*, 563 So. 2d 258, 259-60 (La. 1990) (holding that "arising out of" language in an indemnity provision requires a "connexity similar to that required for determining cause-in-fact: Would the particular injury have occurred but for the performance of work under the contract?"). Louisiana

---

[37]   R. Doc. 52-4 at 23.
[38]   *Id.*

13

courts give an even broader construction of "in connection with" language. For example, in *Poole v. Ocean Drilling & Exploration Co.*, 439 So. 2d 510, 512 (La. Ct. App. 1983), the Court noted that "in connection with" means "being related to or associated with, but not the primary or only purpose of."

Village Mart argues that, at the time of the accident, it was not using, occupying, managing, or controlling the leased space.[39]  Specifically, Village Mart asserts that it was not "using" the space because the only "[p]ermitted [u]se" under the  lease is "the retail sale of men's footwear, apparel, and accessories."[40]  It further contends that Village Mart was not "occupying" the space at the time of the accident because it "had not begun to move its apparel into the store."[41]  It asserts that, instead, management and control of the leased space remained, at least in part, with Oakwood.[42]

Village Mart's assertions are at odds with other terms of the lease and ignore the content of the agreement as a whole.  *See* La. Civ. Code art. 2050. The lease gives Village Mart the right to use and occupy the store before it opened to the public.  Several articles of the lease are dedicated to describing "Tenant's Work," and lay out Village Mart's rights and obligations regarding

---

[39]   R. Doc. 66 at 7-10.
[40]   *Id.* at 7-8; R. Doc. 52-4 at 7.
[41]   R. Doc. 66 at 8.
[42]   *Id.* at 7-10.

its construction work on the premises.[43]   The lease provides that Village Mart's "Tenant Work" will include, among other things: "the installation of storefronts and storefront signs," "interior decorating," "floor covering," and "completion of the air condition system and fire sprinkler system."[44]  In order for Village Mart to carry out these contractual obligations, it would have to use and occupy the leased premises for purposes other than strictly retail. Furthermore, the separate "Beginning Work Date" of July 1, 2018, and "Opening Date" of November 1, 2018, demonstrate that the lease provided for Village Mart's use and occupancy of the premises before the store opened for retail.[45]  It is also undisputed that Oakwood "delivered possession of the Leased Premises" to Village Mart "on or before July 1, 2018," which allowed Village Mart to begin construction work on the buildout.[46]  The Court finds that Village Mart's "possession" of the leased space, and its construction

---

[43]  *See, e.g.*, 52-4 at 8 (Art. 1.18); *id.* at 11 (Art. 2); *id.* at 37-50 (Ex. C).

[44]  *Id.* at 6.

[45]  R. Doc. 52-4 at 7.

[46]  *Id.* ("Beginning Work Date: The date immediately following the date that Landlord delivers possession of the Leased Premises to Tenant, estimated to be on or before July 1, 2018."); *see also id.* at 12 ("If Tenant is prevented from beginning construction in the Leased Premises by the Beginning Work Date because of the failure of Landlord to deliver possession of the Leased Premises to Tenant, the Beginning Work Date, the Opening Date, and the Rental Commencement Date shall be extended . . . .").

15

obligations under the lease, are evidence of its use and occupancy of the space during the buildout.

Furthermore, several provisions within the lease demonstrate the parties' intent that Village Mart would be responsible for the buildout of the leased premises. Village Mart acknowledged in the lease that it "accepts the Leased Premises in its present 'as-is' condition," and that work on the buildout "shall be done by Tenant."[47] Perrier managed the construction of the buildout under a contract between Perrier and Village Mart.[48] Perrier entered into a subcontract with BDC Painters, which ultimately employed plaintiff, Eduardo Avila.[49] Oakwood was not a party to either of these agreements, and under the lease did not assume "any responsibility or liability . . . for the actions of Tenant's contractors or subcontractors or the quality or sufficiency of Tenant's work."[50]

Given the broad language in the indemnity agreement—"arising out of or connected with"[51]— Eduardo Avila's injuries, resulting from his work as a subcontractor painting the premises leased by Village Mart, are connected to

---

[47] *Id.* at 11. Both Village Mart and Oakwood agree that "Oakwood did not perform any actual construction on the project." R. Doc. 66-1 ¶ 11; R. Doc. 52-2 ¶ 11.

[48] R. Doc. 52-4 at 53.

[49] R. Doc. 66-1 at 2.

[50] *Id.*; R. Doc. 52-4 at 47.

[51] R. Doc. 52-4 at 23.

16

Village Mart's use and occupancy of the premises. *See Kan. City S. Ry. Co.*, 2010 WL 1293340, at *6 (rejecting an indemnitor's argument on summary judgment that the underlying accident was "wholly unrelated to its use or occupancy of the leased premises"); *see also Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981) ("A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties."). Because Village Mart was in possession of the space, and had assumed responsibility for the buildout and for contractors and subcontractors working on the buildout, the Court finds that plaintiffs' liability theories fall within the scope of the indemnity provision in the lease.

The Court next addresses Village Mart's "willful misconduct" argument. Under the indemnity provision, Village Mart was not required to indemnify and defend any claims resulting from Oakwood's "willful misconduct."[52] Oakwood relies on the accident report, plaintiffs' answers to requests for admissions, the lease, the contract between Village Mart and Perrier, and the subcontract between Perrier and BDC Painters, to argue

---

[52]   R. Doc. 52-4 at 23.

there is no evidence of Oakwood's willful misconduct or that it had any role in the accident.[53]

Specifically, Oakwood points to the fact it was not a party to either Village Mart's contract with Perrier,[54] or Perrier's subsequent contract with BDC Painters.[55]  It also notes that the record contains no evidence of Oakwood's involvement in providing materials for plaintiff's employer.  To the contrary, the contract between BDC Painters and Perrier states that BDC Painters would provide "all labors, material, on-site supervision, tools, equipment, supplies, and/or services to provide a complete scope of work."[56] Moreover, plaintiff's employer testified that he provided all the equipment for his painters, including the ladder from which plaintiff fell.[57]  Oakwood also points to the lack of evidence that any of its employees were on the premises at the time of plaintiff's accident,[58] let alone involved in supervising or directing plaintiff's work.[59]  Instead, plaintiff stated that he "took all

---

[53]   R. Doc. 52; R. Doc. 76 at 5.
[54]   The contract between Perrier and Village Mart incorrectly lists Village Mart as the "owner" of the space.  Oakwood is not mentioned in the contract.  R. Doc. 52-4 at 60.
[55]   R. Doc. 52-4 at 53-71; R. Doc. 66-1 ¶¶ 14, 18.
[56]   R. Doc. 52-4 at 67-69; 72.
[57]   R. Doc. 66-10 at 3-4 (Hart Deposition 16:21-25; 17: 12-21).
[58]   R. Doc. 52-4 at 76.
[59]   *Id.* at 11.

directions related to the work [he] performed on the premises from BDC Painters."[60]

In response, Village Mart offers no evidence of willful misconduct by Oakwood, nor have plaintiffs cited any in their opposition to Oakwood's summary judgment motion. Village Mart merely asserts that Oakwood "has not presented sufficient evidence to support a claim that a jury will not find willful misconduct on Oakwood's part."[61] Village Mart's "conclusory allegations" do not raise a genuine issue of material fact. *See Little*, 37 F.3d at 1075. Because Village Mart has not set forth any specific facts showing that Oakwood had any involvement in the accident, let alone that Oakwood engaged in willful misconduct, the Court finds that Oakwood is entitled to summary judgment on the issue of whether it engaged in willful misconduct.

Finally, Village Mart contends that further discovery is necessary to determine Oakwood's involvement in the underlying accident.[62] Federal Rule of Civil Procedure 56(d) permits a district court to deny or defer consideration of a motion for summary judgment, allow time to take discovery, or "issue any other appropriate order," when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

---

[60]   *Id.* at 72.
[61]   R. Doc. 66 at 6.
[62]   *Id.* at 5-6.

essential to justify its opposition." Fed. R. Civ. P. 56(d). Requests for additional discovery under Rule 56(d) "are generally favored and should be liberally granted, but the movant must demonstrate (1) why [it] needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact." *Chenevert v. Springer*, 431 F. App'x 284, 287 (5th Cir. 2011) (per curiam); *see also Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (stating that the party opposing summary judgment "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 801 (5th Cir. 1980))). Additionally, if the movant "has not diligently pursued discovery," it is "not entitled to relief" under Rule 56(d). *Spencer v. FEI, Inc.*, 725 F. App'x 263, 269 (5th Cir. 2018) (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001)).

Here, Village Mart argues that summary judgment is premature until the employees of the general contractor can be deposed to determine "what Oakwood was doing at the time of the accident."[63] The Court notes that Village Mart has propounded no written discovery to Oakwood after a year of litigation.[64] Oakwood would obviously have knowledge of "what Oakwood

---

[63]   *Id.* at 6.

[64]   R. Doc. 76 at 7. Plaintiffs sued "Village Mart, LLC and Margarita Del Rio Oakwood Mall, LLC" on December 23, 2019. R. Doc. 1 ¶¶ 1-2.

was doing at the time of the accident."  Further, to the extent Village Mart contends that Perrier may have information regarding Oakwood's potential involvement in the accident, Village Mart fails to identify specific fact witnesses or evidence it seeks from those deponents, or how this information would create an issue of material fact.  Village Mart makes only a vague assertion that unidentified employees of Perrier "may" be able to shed light on "what Oakwood was doing at the time of the accident."[65]  Because Village Mart has not been diligent in pursuing discovery of Oakwood and offers nothing more than a "speculative hope" that discovery might provide it with information supporting its claims, its Rule 56(d) motion must be denied.  *See Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (noting that Rule 56(d) "does not condone a fishing expedition where a [litigant] merely hopes to uncover some possible evidence of [willful misconduct]").

Accordingly, Oakwood is entitled to summary judgment on its claim that Village Mart must indemnify it as to plaintiffs' claims.

---

Village Mart removed the case to this Court on June 30, 2020.  R. Doc. 1.

[65]   *Id.*

### B.    Negligence Claims

Oakwood also moves for summary judgment to dismiss plaintiffs' direct claims of negligence against Oakwood.[66]   Article 2315 contains Louisiana's general negligence provision, which states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315.  Louisiana courts conduct a duty-risk analysis to determine whether to impose tort liability under Article 2315.  *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632-33 (La. 2006).  Under the duty-risk analysis, a plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries; and (5) actual damages.  *Pinsonneault v. Merchs. & Farmers Bank & Trust Co.*, 816 So. 2d 270, 275-76 (La. 2002).

Whether a defendant owes a duty to another presents a question of law. *Lazard v. Foti*, 859 So. 2d 656, 659 (La. 2003).  The relevant inquiry is "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support his claim." *Audler v. CBC Innovis Inc.*,

---

[66]    R. Doc. 52-1.

519 F.3d 239, 249 (5th Cir. 2008) (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993)).  Whether a defendant has breached a duty is a question of fact.  *Mundy v. Dep't of Health & Hum. Resources*, 620 So. 2d 811, 813 (La. 1993).

The Court finds that most of plaintiffs' allegations appear to rest on a theory of custodial or premises liability.[67]   Article 2317.1 of the Louisiana Civil Code describes the standard for custodial liability.   It provides in relevant part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1.

In moving for summary judgment, Oakwood states that it did not owe a custodian's duty of care to plaintiffs because Village Mart, as the lessee, contractually assumed Oakwood's responsibilities for the condition of the leased premises under Louisiana Civil Code § 9:322.[68]  Village Mart contests this assertion and claims that it never assumed responsibility for the

---

[67]  *See, e.g.*, R. Doc. 1-4 at 2 (failure to warn of unsafe conditions, failure to correct known defects in the premises, failure to adequately train or supervise employees on the premises).

[68]  R. Doc. 52-1 at 8-14.

23

premises because Oakwood retained a right to inspect the premises and controlled aspects of the buildout.[69]

Even assuming *arguendo* that Oakwood owed plaintiffs a duty of care, there is no evidence that Oakwood breached any such duty. As an initial matter, plaintiffs have not identified what "defects in the premises" Oakwood failed to correct, let alone that such defects were "known" to Oakwood.[70] Plaintiffs' allegations of "defects" and "unsafe conditions" are unsupported by the record, including the accident report which stated that "[n]o unsafe act or *condition* [was] observed,"[71] and plaintiff's employer's testimony that that he saw no defects in the space.[72] With no identification or evidentiary support of a defect, plaintiffs' conclusory allegations are insufficient to defeat a motion for summary judgment. *See Cormier v. Dolgencorp, Inc.*, 136 F. App'x 627, 628 (5th Cir. 2005) (stating that plaintiff's failure "to submit any evidence or testimony beyond her conclusory allegations that the mat contained defects" was "fatal to her claim"). Additionally, having failed to identify what defect caused their injury, plaintiffs "logically cannot provide

---

[69]   R. Doc. 66 at 11-12.

[70]   R. Doc. 1-4 ¶ 3.

[71]   R. Doc. 52-4 at 77.

[72]   R. Doc. 66-10 at 6 (Hart Deposition 19-20:22-7).

any evidence raising a genuine dispute of material fact that [Oakwood] knew of that defect." *Lamb*, 914 F.3d at 946.

As to plaintiffs' conclusory allegations that Oakwood failed to train or supervise employees, it points to no evidence of any negligent conduct by any Oakwood employee, much less negligent conduct resulting from a lack of training or supervision. There is a similar absence of evidence as to plaintiffs' allegation that Oakwood provided "unsafe equipment to work with."[73] Plaintiffs have not pointed to evidence of what equipment was unsafe, let alone that Oakwood provided this unsafe equipment. To the contrary, plaintiff's employer stated in his deposition that BDC Painters provided "all the materials" for their painters.[74]

In sum, plaintiffs have not produced "any evidence or testimony beyond [their] conclusory allegations" to defeat Oakwood's motion for summary judgment. *Cormier*, 136 F. App'x at 628. The Court thus finds that there is no issue of material fact as to whether Oakwood breached a duty of care to plaintiffs.[75]

Plaintiffs contend in their opposition that the reason they are unable to present evidence of Oakwood's liability is because "[d]iscovery is in its

---

[73]   *Id.*
[74]   R. Doc. 66-10 at 3-4 (Hart Deposition 16:21-25; 17: 12-21).
[75]   R. Doc. 52-1 at 14.

early stages still," and that the parties should "conclude discovery before [the Court] entertain[s] motions for summary judgment that could dismiss any party."[76]  The Court construes this argument as a request for additional time under Federal Rule of Civil Procedure 56(d).  As with Village Mart's request for additional discovery, plaintiffs fail to provide more than "vague assertions that discovery will produce needed, but unspecified facts."  *See Raby*, 600 F.3d at 561 (quoting *Spence & Green Chem. Co.*, 612 F.2d at 801); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990) ("[T]he nonmovant's 'casual reference to the existence of ongoing discovery falls far short of showing how the desired time would enable it to meet its burden in opposing summary judgment.'" (quoting *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986))).

Plaintiffs represent that, because third-party defendants were "recently brought in,"[77] additional time is needed for these parties to conduct discovery.[78]   But plaintiffs never explain why discovery conducted by these third-party defendants is necessary to provide evidence of Oakwood's

---

[76]  *See* R. Doc. 67 at 2-3 ("Adequate discovery has not been conducted on the issue of Defendant Oakwood's liability to Plaintiffs for injuries sustained by Plaintiffs.").

[77]  On February 8, 2021, Village Mart filed a third-party complaint against BDC Painters, Axis Insurance Company, and Perrier.  R. Doc. 30.

[78]  R. Doc. 67 at 2.

negligent breach, especially given that Oakwood has been a party to this litigation since the beginning.[79]  And even if discovery from these third-party defendants were necessary, it is unclear why plaintiffs failed to add them as defendants and instead waited over a year for Village Mart to file a third-party complaint.[80]

Now plaintiffs assert that more depositions are necessary to determine Oakwood's liability.[81]  But plaintiffs fail to indicate whom they seek to depose, what steps they have taken to schedule any depositions,[82] what evidence they seek from the deponents, or how these depositions will provide information relevant to Oakwood's alleged negligence.  Notably, despite plaintiffs' representations about the importance of additional discovery, the parties have taken only one deposition after a year and a half of ongoing litigation.[83] That deposition was of plaintiff's employer and occurred on May 11, 2021.[84]  Plaintiffs concede that the deposition "was not informative" of Oakwood's liability to plaintiffs for the accident.[85]  And although plaintiffs

---

[79]   R. Doc. 1.

[80]   R. Doc. 30.

[81]   *Id.*

[82]   *Id.* at 2-3 ("The parties are attempting to coordinate dates for the next several depositions that need to be taken.  No date has been chosen as of the time this memorandum was written.").

[83]   R. Doc. 67 at 2-3.

[84]   *Id.* at 2.

[85]   *Id.* at 3.

still lack information about Oakwood's alleged liability, they have not noticed Oakwood for a deposition, nor have they propounded written discovery to Oakwood.[86]   The Court therefore finds that plaintiffs have not "diligently pursued discovery" with regard to their negligence claim against Oakwood. *See Spencer*, 725 F. App'x at 269 (affirming the district court's denial of plaintiff's Rule 56(d) motion for lack of diligence where plaintiff "waited for over a year to serve his first deposition subpoenas").

Accordingly, the Court denies plaintiffs' request to continue Oakwood's motion for summary judgment until further discovery is conducted. Furthermore, given the lack of any evidence implicating Oakwood in plaintiff's accident, the Court grants Oakwood's motion to dismiss plaintiffs' negligence claims.

---

[86]   Discovery in this case was initially scheduled to conclude by November 2, 2021. R. Doc. 11 at 6.  The Court extended the discovery deadline to March 7, 2022 because third-party defendants were added to the case after the Court issued its scheduling order.  R. Doc. 73.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Oakwood's motion for summary judgment.

New Orleans, Louisiana, this ___28th___ day of September, 2021.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE